**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HAROLD SHAW,

               Petitioner,                     Case Number: 2:07-CV-14326

v.                                        HONORABLE PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

RAYMOND BOOKER,

               Respondent.

_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DENYING CERTIFICATE OF APPEALABILITY</u>**

Petitioner Harold B. Shaw has filed a petition for a writ of habeas corpus under 28

U.S.C. § 2254.  Petitioner is incarcerated at the G. Robert Cotton Correctional Facility in

Jackson, Michigan.  He challenges his convictions for first-degree felony murder, assault

with intent to commit murder, first-degree home invasion, and possession of a firearm

during the commission of a felony.  He claims the prosecutor knowingly presented false

evidence, he was denied a fair trial when the trial court denied his motion for severance,

his rights under the Confrontation Clause were violated, and he received ineffective

assistance of counsel.  For the reasons set forth below, the Court denies the petition and

denies a certificate of appealability.

**I.**

Petitioner's convictions arise from a robbery and shooting at a home on Moenart

Street, Detroit, on September 18, 2000, which resulted in the death of Mary Shakur and a

gunshot wound to her 4-month-old daughter Lauriah Northern.

Detroit police officer Paul Kraus testified that he responded to the site of the shooting at approximately 11:40 p.m. He found Shakur's body on the back landing of the house. The baby girl was underneath Shakur and her two-year-old son was crawling on top of her. Officer Kraus testified that Shakur was deceased and the baby girl had a gunshot wound to her shoulder. She and her older brother were transported to the hospital.

Officer Kraus observed a grill with footprints on top of it underneath a window. A window screen was on the ground beside the grill. The screen appeared to have come from the second-floor window that overlooked the grill. Officer Kraus also noticed a minivan parked nearby and blocking a driveway. He observed ammunition, a barrel of a gun, and jumper cables inside the van. The van was later identified as being owned by David Harrison.

David Harrison testified that he loaned his minivan to Jafari Martin on September 18, 2000. Later that evening, Harrison saw Marcus Walker driving his van, with Petitioner in the front passenger seat, and Martin in the backseat. Walker motioned for Harrison to follow him to Moenart Street. Harrison did so. When they arrived at Moenart Street, Walker rolled down his window and said he was going to "handle some business. Cause some money came up kind of funny in my spot." Tr., 3/12/01, 69. Harrison testified that, as Walker made this statement, he was waving a pistol. Petitioner also displayed a pistol and said, "Yeah, we fixing to handle this business, you know." *Id.*

2

at 70.  Harrison then left.

Police sergeant JoAnn Kinney testified that she took a statement from co-defendant Jafari Martin.  He stated that he raised the idea of a robbery with Petitioner and Walker and that the three men planned the robbery together.  He knew that Mary Shakur's boyfriend had a large sum of money in the house.  Martin stated that he backed out of the robbery, taking a bus home before the robbery.

Police Sergeant Ernest Wilson took a second statement from Martin, in which Martin admitted that he did not take a bus home prior to the robbery.  Instead, he stayed in the van while Petitioner and Walker entered the house.  He heard two gunshots. Petitioner and Walker then ran to the van and Petitioner, who was carrying a gun, said, "I killed them.  I killed them."  Tr., 3/13/01, 82.

Police Officer Gregory Edwards' testimony from the *Walker* hearing challenging the voluntariness of his statement was read into the record.  Officer Edwards took a statement from Petitioner on September 20, 2000.  In that statement, Petitioner stated that Martin told him about a person they could rob.  Petitioner then went to Shakur's house with Martin and Walker.  Martin and Walker went to the back of the house, while Petitioner remained outside as a lookout.  He heard two gunshots, then ran home. Petitioner denied having a gun.

## II.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of

first-degree felony murder, assault with intent to commit murder, first-degree home invasion, and possession of a firearm during the commission of a felony.  On April 2, 2001, he was sentenced to life in prison for the first-degree murder and assault with intent to commit murder convictions, twenty to thirty years in prison for the first-degree home invasion conviction, and five years consecutive in prison for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I. Defendant was denied a fair trial by the trial court's refusal to sever defendant's trial from that of co-defendant Jafari Martin.

II. The introduction of co-defendant Walker's statements to Mr. Harrison violated the hearsay rule and defendant's right to confrontation and to a fair trial.

III. Defendant was denied his state and federal constitutional right to a fair trial by the admission, without a limiting instruction, of codefendant Martin's post-arrest statements to the police.

IV. Defendant is entitled to a remand for an evidentiary hearing to establish that his statement to the police should have been suppressed because his federal and state constitutional right to be free from unreasonable seizures was violated where his warrantless arrest was not supported by probable cause.

V. Defendant's statement should have been suppressed when the police denied defendant's request for counsel.

VI. Because the issue of credibility was "closely drawn," the court committed reversible error by failing to sua sponte give a cautionary instruction on the unreliability of accomplice testimony with regard to the prosecution's key witnesses, Jafari Martin and David Harrison, in violation of defendant Shaw's right to a properly instructed jury.

4

VII.   The prosecutor did not establish that the missing witness was unavailable at trial because he was not required to demonstrate that he had exercised "due diligence" in attempting to secure his presence; it was therefore error to allow him to introduce the witness's prior *Walker* hearing testimony.

VIII.   The trial court reversibly erred when it instructed the jury erroneously on A) reasonable doubt; B) the underlying felony of larceny in the felony murder instruction; C) felony firearm; and D) failed to re-instruct on mere presence.

IX.   Defendant was denied his state and federal constitutional right to the effective assistance of counsel.

Petitioner also filed a motion to remand to develop a factual record on his ineffective assistance of counsel claim. The Michigan Court of Appeals denied his motion to remand. *People v. Shaw*, No. 234923 (Mich. Ct. App. April 5, 2002).

The Michigan Court of Appeals issued an opinion affirming in part, but remanding for a due diligence hearing. *People v. Shaw*, No. 234923 (Mich. Ct. App. June 12, 2003). Following the due diligence hearing, the Michigan Court of Appeals affirmed the trial court's finding of due diligence. *People v. Shaw*, No. 234923 (Mich. Ct. App. Oct. 28, 2003). The Michigan Court of Appeals denied a motion for reconsideration. *People v. Shaw*, No. 234923 (Mich. Ct. App. Dec. 11, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Shaw*, 471 Mich. 865 (Mich. July 29, 2004).

Petitioner filed a motion for relief from judgment in the Wayne County Circuit court. He raised these claims:

I.   Defendant was denied his state and federal due process rights where his

5

convictions were obtained through the knowing use of false and perjured testimony by the officer in charge, and where the prosecution failed to correct the false and perjured testimony; proof of this false and perjured testimony was not available at the time of trial and defendant must be granted a new trial on the basis of this newly discovered evidence.

II.     Defendant was denied his state and federal constitutional right to the effective assistance of counsel, where counsel failed to object.

III.    Defendant is entitled to relief from judgment where there is good cause for not raising the issues previously, the issues involve the denial of constitutional rights, defendant was prejudiced, and manifest injustice has resulted.

The trial court denied the motion for relief from judgment. *People v. Shaw*, No. 00-11373 (Wayne County Cir. Ct. Apr. 25, 2006).

Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Shaw*, No. 277613 (Mich. Ct. App. July 17, 2007); *People v. Shaw*, 480 Mich. 1005 (Mich. Dec. 28, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises these claims:

I.      Mr. Shaw was denied his federal due process right where his convictions were obtained through the knowing use of false and perjured testimony by the officer in charge, and where the prosecution failed to correct the false and perjured testimony; proof of this false and perjured testimony was not available at the time of trial and Mr. Shaw must be granted a new trial on the basis of this newly discovered evidence.

II.     Mr. Shaw was denied a fair trial by the trial court's refusal to sever Mr. Shaw's trial from that of codefendant Jafari Martin.

III.    The trial court abused its discretion in ruling the prosecutor had shown due

6

diligence in attempting to subpoena, locate and produce Officer Edwards, and thus permitting Officer Edwards' prior recorded testimony to be read to the jury, thus denying Mr. Shaw his federal constitutional right to confrontation.

IV.    Mr. Shaw was denied his federal constitutional right to the effective assistance of counsel, where (A) counsel failed to object to Sgt. Wilson's testimony, (B) failed to object to the admission of codefendant Walker's statements to Mr. Harrison on confrontation grounds and failed to request the appropriate instructions, (C) failed to object and/or request a limiting instruction regarding codefendant Martin's post-arrest statements to the police, (D) failed to move to suppress Mr. Shaw's statement to the police based on an illegal arrest, and (E) failed to object when the trial court's re-instruction on aiding and abetting did not include the mere presence instruction when he re-read the aiding and abetting instructions upon the jury's request.

## III.

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

7

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.

### A.

Petitioner argues that the prosecutor knowingly presented false testimony when he

9

allowed City of Detroit police sergeant Ernest Wilson to testify falsely. Petitioner maintains that Sergeant Wilson incorrectly testified that the gunshot residue test of co-defendant Jafari Martin was negative.

This claim was presented for the first time on state court collateral review. Respondent argues that the claim is procedurally defaulted. Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner's claim that the prosecutor knowingly presented false testimony was raised for the first time on state court collateral review. The Michigan Supreme Court and Michigan Court of Appeals denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously

10

and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit recently has held that the form order used by the Michigan appellate courts to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained orders of the Michigan Supreme Court and Michigan Court of Appeals to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

The trial court conducted an evidentiary hearing on this claim and ruled on the merits, without citation to any state procedural rule to limit its consideration of the merits of the claim. Thus, under the standard set forth under *Guilmette*, this claim is not procedurally barred and the Court will examine its merits.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

11

A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "contours of [a false-testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. at 269–72, 79 S.Ct. 1173, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)." *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95, *quoting Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998).

A false statement is material under this standard, and "[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271.

The trial court held that Petitioner failed to establish that Officer Wilson gave perjured testimony. The court reasoned that, although Officer Wilson testified that he believed Martin's gunshot residue test was negative, he was also somewhat equivocal in

his response, admitting that he was not certain about this testimony.  The admitted

uncertainty with which Officer Wilson testified about the gunshot residue test and the fact

that the gunshot residue test report was not given to the prosecutor until after the

completion of Petitioner's trial led the trial court to conclude that Officer Wilson's

testimony was not false.

The Court has reviewed Officer Wilson's testimony and the parties' arguments to

the trial court regarding this testimony.  The transcript supports the trial court's

conclusion that Officer Wilson's testimony was not false and that he clearly testified as to

his uncertainty regarding the results of the gunshot residue test.  Petitioner has not met his

burden of showing that the state court's conclusion that Officer Wilson's testimony was

not perjured was contrary to or an unreasonable application of Supreme Court precedent.

**B.**

Next, Petitioner argues that he was denied his right to a fair trial when the trial

court denied a motion to sever his trial from that of co-defendant Jafari Martin.

To the extent that Petitioner argues that failure to grant a severance violated

Michigan Court Rule 6.121 regarding discretionary severance, such a claim is not

cognizable on habeas corpus review.  *Post v. Bradshaw*, 621 F.3d 406, 427 (6th Cir.

2010).  The relevant question on habeas review is whether the failure to sever the trials

impinged on Petitioner's right to due process of law.  *Davis v. Coyle*, 475 F.3d 761, 777

(6th Cir. 2007) (*citing Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980)).  To

prove a due process violation, Petitioner must show that the joint trial "result[ed] in

13

prejudice so great as to deny [Petitioner] his . . . right to a fair trial." *Id.* at 777 (*quoting United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986)).

"Courts should grant a severance 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Stanford v. Parker*, 266 F.3d 458-59 (6th Cir. 2001), *quoting Zafiro v. United States*, 506 U.S. 534, 539 (1993). Joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). The decision whether to grant a motion for severance is within the trial judge's discretion, and an "alleged abuse of [that] discretion, without more, is not a constitutional violation." *Id.* A separate trial is not required simply because defendants present antagonistic defenses. *Stanford*, 266 F.3d at 458. "A defendant seeking severance must show substantial, undue, or compelling prejudice to a specific trial right." *Lang v. Gundy*, 399 F. App'x 969, 976 (6th Cir. 2010). "To find prejudice sufficient to require habeas corpus relief where it is not claimed that a joint trial resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation . . ., [the court] must determine from the entire record that the fundamental right to a fair trial as secured by the Fourteenth Amendment has been abridged." *Jenkins v. Bordenkicher*, 611 F.2d 162, 168 (6th Cir. 1979). This is a "very heavy burden." *Stanford,* 266 F.3d at 459.

Antagonistic defenses exist "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir.

14

1993), *citing United States v. Crawford*, 581 F.2d 489 (5th Cir. 1978). "The mere fact that each defendant points the finger at another is insufficient [to require severance]; the defendant must show that the antagonism confused the jury." *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988).

The Michigan Court of Appeals held that the trial court did not err in denying Petitioner's motion for separate trial. The state court held that Petitioner failed to demonstrate that his substantial rights would be prejudiced by a joint trial. The state court further held that the defenses were not antagonistic. The fact that both Petitioner and Martin claimed to be acting as lookouts in their respective custodial statements did not require severance because the prosecutor pursued aiding and abetting theories against both men. *Shaw*, 2003 WL 21362950 at *1.

Petitioner does not allege that he was deprived of a specific constitutional right. Therefore, to establish entitlement to habeas corpus relief, he has to show that his fundamental right to a fair trial has been abridged. *Jenkins*, 611 F.2d at 168. After a careful review of the record and the evidence presented at trial, and consideration of the potential for prejudice, the Michigan Court of Appeals determined that denial of the motion for severance did not deprive Petitioner of a fair trial. Petitioner has not established that the state court's determination was contrary to or an unreasonable application of Supreme Court precedent. Petitioner is not entitled to habeas corpus relief with respect to this claim.

**B.**

15

Petitioner argues for issuance of a writ of habeas corpus because the trial court abused its discretion in finding that the prosecutor had exercised due diligence in attempting to locate and produce Officer Edwards and that Petitioner's right to confrontation was violated by the admission of Officer Edwards' *Walker* hearing testimony.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Petitioner argues that the witness was not unavailable because the prosecution failed to exercise due diligence to produce him. "[A] witness is not 'unavailable' for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial." *Ohio v. Roberts*, 448 U.S. 56, 74 (1968), *abrogated on other grounds by Crawford*, 541 U.S. at 57-61 (quotation omitted). "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *California v. Green*, 399 U.S. 149, 189, n. 22 (1970).

The trial court denied Petitioner's request for a hearing to determine whether diligent good-faith efforts were made to procure Officer Edwards' testimony. On direct appeal, the Michigan Court of Appeals remanded the case for a due diligence hearing.

16

Following the hearing, the trial court held that due diligence was exercised in attempting to secure witness Officer Edwards. The trial court considered testimony from the officer in charge of the case, Ernest Wilson, that Officer Edwards was on furlough at the time of trial. Officer Wilson testified that he attempted to contact Officer Edwards on his home phone and on his police department cell phone. Officer Wilson stopped by Officer Edwards' home approximately four times and saw no signs of vehicles in the driveway. Officer Wilson left a subpoena in Officer Edwards' mailbox. He also left a business card with a neighbor who agreed to tell Officer Edwards to contact Officer Wilson. He learned from talking to several of Officer Edwards' friends that Officer Edwards was out of town. A neighbor confirmed that Officer Edwards had not been seen for a couple of weeks. The Michigan Court of Appeals then held that the trial court properly determined that the prosecutor exercised due diligence. *People v. Shaw*, No. 234923 (Mich. Ct. App. Oct. 28, 2003).

This Court finds that the facts considered by the Michigan Court of Appeals support its conclusion that the prosecution acted with due diligence and the state court's decision, accordingly, is not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner further argues that the admission of this testimony violated his rights under the Confrontation Clause because he was not permitted to cross-examine Officer Edwards at trial. The Sixth Circuit has recognized "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for

17

cross-examination for Confrontation Clause purposes." *Al-Timini v. Jackson*, 379 F.

App'x 435, 437 (6th Cir. 2010), *citing Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir.

2007) (doubting whether "the opportunity to question a witness at a preliminary

examination hearing satisfies the pre-*Crawford* understanding of the Confrontation

Clause's guarantee of an opportunity for effective cross-examination") (internal quotation

marks omitted).  The Sixth Circuit reasoned that because the purpose of the preliminary

examination is only to determine whether probable cause to proceed to trial exists,

defense counsel may "lack adequate motivation to conduct a thorough cross-examination

. . . and may wish to avoid tipping its hand to the prosecution by revealing the lines of

questioning it plans to pursue."  *Id.*  Additionally, a preliminary hearing may occur too

early in the proceedings to be useful to the defense.  *Id.*  Nevertheless, the AEDPA

constrains a federal Court to grant habeas relief only if the state court's decision is

contrary to or an unreasonable application of clearly established Supreme Court

precedent.  The Sixth Circuit concluded in *Al-Timini* that no *clearly established* Supreme

Court precedent holds that a preliminary examination fails to satisfy the *Crawford*

standard of an opportunity for effective cross-examination.  *Id.*  Therefore, a state court's

decision that no Confrontation Clause violation occurred where a defendant had an

opportunity for cross-examination at a pre-trial hearing satisfies *Crawford's* guarantee

and is not a basis for habeas corpus relief.

## C.

Finally, Petitioner argues that his trial attorney was ineffective.  Specifically, he

claims counsel was ineffective in: (i) failing to object to Officer Wilson's testimony, (ii) failing to object to the admission of co-defendant Walker's statements to Mr. Harrison on confrontation grounds and failing to request the appropriate instructions, (iii) failing to object and/or request a limiting instruction regarding co-defendant Martin's post-arrest statements to the police, (iv) failing to move to suppress Mr. Shaw's statement to the police based on an illegal arrest, and (v) failing to object when the trial court's re-instruction on aiding and abetting did not include the mere presence instruction when he re-read the aiding and abetting instructions upon the jury's request.

Respondent argues that all of Petitioner's ineffective assistance of counsel claims are procedurally defaulted.  The last state court to address Petitioner's claims of ineffective assistance of counsel was the Michigan Court of Appeals on direct review. The state court of appeals declined to address these claims because they were not sufficiently briefed to properly invoke appellate review.  Petitioner clearly failed to comply with state procedural rules concerning preservation and presentation of claims in the Michigan Court of Appeals.  *See Lee v. Booker*, No. 2:08-cv-11170, 2010 WL 5068025, at *8 (E.D. Mich. Dec. 7, 2010), *citing Santiago v. Booker*, 2010 WL 2105139 (E.D. Mich. May 25, 2010); *Belanger v. Stovall*, 2009 WL 2390539 (E.D. Mich. July 31, 2009); *Marchbanks v. Jones*, 2009 WL 1874191 (W.D. Mich. June 26, 2009) ("a review of Michigan cases shows that the principal of abandonment is regularly applied and is a ground independent of the merits.").  These claims are, therefore, procedurally defaulted. Petitioner does not attempt to demonstrate cause or actual innocence to excuse the

19

default. Accordingly, these claims are barred from habeas review.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI.

For the reasons stated above, the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED**.

**SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 11, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 11, 2011.

S/Denise Goodine
Case Manager